## ISBELL v. WESTHEIMER et al.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1923.)

No. 6215.

Mines and minerals ⬅78(7)—Payment of delay rental presumed to have been made on date of receipt.

> Evidence *held* insufficient to overcome the presumption, arising from the date of the receipt therefor, that a payment of delay rental in renewal of an oil lease was made within the time required by the contract.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit in equity by R. Isbell against Max Westheimer and David Daube. Decree for defendants, and complainant appeals. Affirmed.

William Hodges, of Texarkana, Tex., and J. E. Williams, of Ardmore, Okl. (J. Q. Mahaffey, of Texarkana, Tex., and H. H. Brown and R. B. Brown, both of Ardmore, Okl., on the brief), for appellant.

George S. Ramsey, of Muskogee, Okl. (Edgar A. De Meules, of Tulsa, Okl., and Malcolm E. Rosser and Villard Martin, both of Muskogee, Okl., on the brief), for appellees.

Before SANBORN and LEWIS, Circuit Judges, and McGEE, District Judge.

SANBORN, Circuit Judge. R. Isbell, the plaintiff below, the appellant here, and the owner of 20 acres of land in the state of Oklahoma, of which his remote grantor had made an oil and gas lease on September 29, 1916, to E. W. Horton, brought this suit against the defendants, Westheimer and Daube, the assignees and owners of that lease, and prayed for a decree that the $20 delay rental under the lease due September 29, 1918, had never been paid; that the term of that lease had been terminated on September 29, 1918; that the written agreement of the plaintiff with the defendants, made on June 13, 1919, to the effect that he recognized the lease as valid until September 29, 1919, was obtained from the plaintiff by the false representation of the defendants' agent, Roland, that the delay rental due September 29, 1918, had been paid; and that such agreement was fraudulent and void. The defendants answered that the rent due September 29, 1918, had been paid before that day, denied that the representation of Roland that it had been paid was false, and denied that the agreement of June 13, 1919, had been induced by any such false representation. There was a final hearing on these pleadings and the evidence produced by the parties. The court found that the evidence left its mind in "a state of uncertainty as to whether all the rentals had been paid," that all parties acted in good faith and believed the rentals had been paid when the agreement of June 13, 1919, whereby the plaintiff recognized the lease as valid until September 29, 1919, was made, and rendered a decree for the defendants.

Counsel for the plaintiff in support of the appeal press these two questions: Did the evidence so clearly prove that the delay rental accruing under the lease on September 29, 1918, was not paid on or before that date, that the court below should have so found and decreed? If it should have so found, was the evidence such that it also should have decreed that the representation made by the defendants' agent Roland to the plaintiff was such that the court ought to have found and adjudged that the agreement of recognition of the lease was void, because obtained by the false representation concerning the material fact which induced the plaintiff to make it? Counsel concede that, if the first question is answered in the negative, the second one becomes immaterial. These facts are conclusively established by the evidence:

The lease was in the customary form of oil and gas leases in the state of Oklahoma. By it the lessor leased the land to B. F. Eleazer for the sole and only purpose of mining and operating for oil and gas for three years from September 29, 1916, and as long thereafter as oil or gas, or either of them, was produced from said land by the lessee, and the lessee agreed to deliver to the lessors specified shares of the oil and gas produced under the lease. It provided that, if no well was commenced on the leased land on or before September 29, 1917, the lease should be terminated, unless the lessee paid $20 to the lessor on or before that date, the payment of which should operate as a rental and confer the privilege of deferring the commencing of a well for 12 months from September 29, 1917. It contained a like provision for the payment of a delay rental on or before September 29, 1918. Such a delay rental was paid on or before September 29, 1917. Whether or not the delay rental accruing September 29, 1918, was paid on or before that date, is the question, and upon that issue the evidence is conflicting.

The lease provided that the privilege of assigning the estate of either party, in whole or in part, was allowed, and that no change in the ownership of the land or the assignment of rentals or royalties should be binding on the lessee until after the lessee had been furnished with a written transfer or assignment, or a true copy thereof, and no such written transfer or assignment or copy thereof was ever served on the lessee, Eleazer, so that his payment of the $20 delay rental to his lessor, Horton, if made prior to September 29, 1918, was an effectual payment as against Isbell under the lease. Horton, the lessor, conveyed the land, subject to the lease, to Ward on October 10, 1916, and Ward conveyed that estate to the plaintiff, Isbell, on February 27, 1918. On September 29, 1916, Eleazer, the lessee, assigned and conveyed his leasehold estate in 10 of the 20 acres to T. B. Weaver, and on June 11, 1919, T. B. Weaver assigned and conveyed his leasehold estate in that 10 acres back to Eleazer. Thereafter, in June, 1919, the lessee, Eleazer, assigned and conveyed his leasehold estate in the 20 acres to the defendants, and thereupon they sunk a well, and ever since have been operating a mine upon the leased land.

The $20 delay rental which the lease required payment of on or before September 29, 1918, under the penalty of a termination of the lease on that day, was paid to Horton, the lessor, for himself and Weaver, by the lessee, Eleazer. Horton turned this $20 over to Ward, to whom he had conveyed the land subject to the lease on October 10, 1916. Ward signed two receipts for this $20, one to Weaver for $10 for the delay rental of his 10 acres due September 29, 1918, and the other to Eleazer for the delay rental of his 10 acres due September 29, 1918. These receipts bear the date December 10, 1917, a date nearly 10 months prior to September 29, 1918, the last day on which the payments would be effectual to continue the lease in force. The payment in question was made to Horton, the money so paid was turned over by Horton to Ward, because on October 10, 1916, Horton had conveyed the land to Ward and for these payments Ward signed two receipts dated December 10, 1917, one to Eleazer for $10

for the delay rental due September 29, 1918, on the 10 acres he then owned, and one to T. B. Weaver for the delay rental due September 29, 1918, on the 10 acres he then owned. These receipts were drawn by Eleazer and presented to Horton by him when he paid him the $20. Horton took them to Ward, who signed them, and then Horton returned them to Eleazer. Eleazer testified that in December, 1917, he lived at Sulphur, Okl., 60 miles from Wilson, where Horton, who was cashier of the First National Bank at that place, lived; that his son-in-law, Mr. Gill, had told him that Weaver had given him $10 to pay the latter's delay rental due September 29, 1918; that he, Eleazer, was at Horton's bank at Wilson at the time he drew the receipts and paid the $20 for the delay rental of 1918; that he offered the $20 to Horton, and Horton said he was not entitled to it, because he had conveyed the land to Ward; that he (Eleazer) then wrote out the receipts and asked Horton to take the money, pay it to the proper party, and return the receipts to him; that Horton took the money and the receipts, and returned the receipts to him, signed by Ward, within three days thereafter, while he was still at Wilson on his trip from his home at Sulphur; and that the date on the receipts was the date on which they were returned to him.

Horton testified that Eleazer tendered him the delay rental due September 29, 1918; that he told him he had sold the land to Ward; that Eleazer gave him the $20 and the two receipts for Ward to sign; that he accepted the money and the receipts, and told Eleazer that he would give the money to Ward; that he did give it to Ward; that he obtained the receipts signed by Ward and turned them over to Eleazer; that he presumed he did so within a day or so of the time he received them from Eleazer; that he noticed the date of the receipts when Ward signed them; that he did not just remember the date, but that it was in cold weather, and it seemed to him it was in the winter of 1917, or the first part of 1918. He testified as follows:

"Q. You have no idea as to when? A. It was in the winter of 1917 or 1918; 1917, I think, I don't just remember."

He further testified that at some time, either weeks or months later, or a day or two after Ward took the money and signed the receipts, or at that time, he brought the $20 back, said he had sold the land and wanted the money deposited to the credit of the purchaser, but, that he did not know his name, and he left the money with him (Horton); that he (Horton) attached the $20 to a deposit slip, endorsed it "rental deposited by Ira Ward," put it in the escrow file, subsequently tendered the money to the plaintiff, Isbell, who refused to accept it, later notified Ward that Isbell would not take it and Ward then again took the money.

The evidence which has now been recited is substantial and persuasive that the delay rental in issue was paid before September 29, 1918, but counsel for the plaintiff insist that it is overcome by the testimony of Mr. Ward and these facts and circumstances. Horton had conveyed the 20 acres to Ward, subject to the lease, on October 10, 1916, and Ward was the owner of it on December 10, 1917, when the receipts indicate that he signed them and took the $20 from Horton.

Ward conveyed this land to Isbell on February 25, 1918. He testified that Horton tendered the $20 to him, and he receipted for it, after he sold the land to Isbell, after the well in the Hewitt oil field was started in February, 1919, and after that well was completed. Fenner, a witness for the plaintiff, testified that that well was completed on June 5, 1919, and Westheimer testified that when he bought the lease of the first 10 acres of this land from Eleazer on June 3, 1919, the date of the latter's assignment to him, he saw Ward's receipt of December 10, 1917, for the payment of the delay rental for 1918 on that 10 acres. The court below, when Mr. Ward had testified that Horton shoved two $10 bills to him and said, "Here is $20 rental on that land over there," and he replied "No, it don't belong to me," pushed the money back to him, and told him that he had sold the land, made these inquiries, and received these answers:

"Q. When did you sign the receipts they brought you? A. I could not say.
"Q. That time or later? A. Before.
"Q. Before? A. For the money?
"Q. Yes. A. Right then.
"Q. He offered you the receipts at that time? A. Yes, sir; that money was offered to me in the winter time."

If the money was tendered to Ward and the receipts were signed in the winter time, and if, as he testified, the tender was not made and the receipts were not signed until after that well in the Hewitt field was completed on June 5, 1919, then the payment and the receipts must have been made in the winter of 1919, after this suit was commenced on July 14, 1919. It is probable, however, that Mr. Ward was mistaken in his testimony that the making of the payment and the receipts was after the well in the Hewitt field was completed on June 5, 1919. On his cross-examination Mr. Ward testified:

"My recollection is that, when Horton first tendered me this money, it was in the winter time. I could not say whether it was in the winter of 1917 or 1918.
"Q. Could not say it was not in December, 1917? A. No, sir."

The foregoing is all the substantial evidence that the payment of the $20 for the delay rental was made, as counsel for the plaintiff contends, after September 29, 1918. It is clearly insufficient to meet, much less to overcome, the prima facie presumption which arises from the written receipts and their date, the positive testimony of Mr. Eleazer, who drew the receipts and paid the rental, the supporting testimony of Mr. Horton and the legal presumption, in the absence of strong evidence to the contrary, that the transaction was not fraudulently but was honestly conducted. The evidence in this case has convinced that the delay rental required by the lease to be paid on or before September 29, 1918, was so paid, the second question in the case is rendered immaterial by this conclusion and the decree below must be and it is
Affirmed.